**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**EASTERN AIRLINES, INC., Defendant.**

**No. 78–316–CIV–SMA.**

United States District Court, S. D. Florida.

July 27, 1979.

Richard P. Magurno, General Atty., Eastern Airlines, Inc., New York City, for defendant.

James L. Stine, Atty. for the Secretary of Labor, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

## MEMORANDUM OPINION AND ORDER

ARONOVITZ, District Judge.

This cause came on for consideration upon the motions of Defendant for Summary Judgment and for Joinder of Local 553, Transport Workers Union of America, AFL–CIO (TWU) as a defendant, and Plaintiff's Cross Motion for Partial Summary Judgment. Thereafter, on August 18, 1978, the parties filed a Pretrial Stipulation herein agreeing to the back wages due and to which employees are entitled to reinstatement should the plaintiff prevail in accordance with the Court's decision as to the applicability of the two or three year Statute of Limitations of the Portal to Portal Act, 29 U.S.C. Section 255. The court having considered the record and the arguments of counsel and being otherwise fully advised in the premises, hereby finds that Defendant's Motions for Summary Judgment and Joinder should be denied and

Plaintiff's Motion for Partial Summary Judgment should be granted.

The Secretary of Labor alleges that Eastern Air Lines has violated the provisions[1] of the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621, *et seq.* (ADEA). Defendant admits that it is covered by the provisions of ADEA, that the Secretary did attempt to conciliate this matter, and that the flight attendants involuntarily retired at age 62 (except for John Guthrie whose age was 63) were all retired solely because of their ages, and for no other factors. The Defendant has raised an affirmative defense alleging that the aforesaid retirements were within the exception of Section 4(f)(2) of the ADEA.

## STATEMENT OF UNDISPUTED FACTS

Defendant, Eastern Air Lines, Inc., has had in effect since October 1, 1947, a retirement income plan known as the Eastern Air Lines Fixed Benefit Income Plan for Flight Attendants (Plan). Under the terms of the Plan in effect from October 1, 1947, up to and including December 31, 1973, the normal retirement date was the first day of the month coinciding with or the next month following the flight attendant's 65th birthday.

Pursuant to collective bargaining between the defendant and TWU on January 1, 1974, the Plan was amended to lower the normal retirement age from sixty-five to sixty-two. On July 15, 1974, TWU, which was involved in negotiations of a new contract with the defendant, informed the defendant that the lowering of the retirement age in the Plan from age 65 to 62 could violate the ADEA. The TWU then proposed that the Plan be amended to allow the defendant's employees the option to retire from age 62 to 65.

The defendant later informed TWU that it was the opinion of its counsel that the lowering of the retirement age was in compliance with ADEA based on their reading of *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (C.A. 5, 1974) (Defendant's Memorandum of Law in Support of Eastern Air Lines, Inc.'s Motion for Joinder p. 3).

The defendant under the terms of the Plan with the amended lower retirement age retired the following flight attendants at the specified age on the stated date solely on the basis of their ages:

| NAME | AGE | DATE OF RETIREMENT |
|------|-----|--------------------|
| Toivo Puotinen | 62 | May 1, 1976 |
| Edward Schoettly | 62 | July 1, 1975 |
| John V. Routh | 62 | June 1, 1975 |
| Matthew Tyndall | 62 | Sept. 1, 1974 |
| John Steger | 63 | April 1, 1977 |
| Robert K. McCance | 62 | July 1, 1974 |
| Leslie Voget | 62 | July 1, 1974 |

On July 1, 1977, the defendant and TWU pursuant to collective bargaining amended the Plan to allow the defendant's employees the option to continue working to age 65.

## MOTION FOR JOINDER

The defendant pursuant to Rules 19 and 21 of the Federal Rules of Civil Procedure moved to have TWU joined in the action as a defendant on the grounds that TWU was an indispensable party.

The defendant argued that a labor organization must be joined when the employer has violated the law by reason of its compliance with the terms of the collective bargaining agreement, citing a number of cases decided under Title VII of the Civil Rights Act of 1964.[2]

Plaintiff contended on the other hand that the cases[3] which have been decided

**1.** Section 4(a)(1) of ADEA states:

Sec. 4. (a) It shall be unlawful for an employer —(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

**2.** *See, e. g., E.E.O.C. v. McLean Trucking Co.,* 525 F.2d 1007 (C.A. 6, 1975); *E.E.O.C. v. Mac-*

*Millan Bloedel Containers, Inc.,* 503 F.2d 1086 (C.A. 6, 1974).

**3.** *Dunlop v. Beloit College,* 411 F.Supp. 398 (W.D.Wis.1976); *Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057 (S.D.N.Y.1975); *Wirtz v. Hayes Industries, Inc.,* 58 CCH Lab. Cas. Section 32,085 (N.D.Ohio, 1968) (not officially reported).

under the equal pay provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Section 201, *et seq.* (hereinafter FLSA) on the issue of joinder of a union are more applicable. The Court finds the decisions cited by the plaintiff persuasive. Under Section 7(b) of the ADEA the Secretary of Labor enforces violations of ADEA and recovers damages through section 17 of the FLSA. Therefore, the decisions under the FLSA in regard to joinder of unions are more closely analogous to this matter than those cases decided under Title VII of the Civil Rights Act of 1964.

Pursuant to the collective bargaining agreement, the Plan was amended on July 1, 1977, to comply with the Act, therefore, the remedy sought in this matter will not require any changes in the terms of the collective bargaining agreement. The defendant argues that TWU has an interest in this matter because of the effect reinstatement of senior flight attendants would have on the seniority system. However, the joinder of the union would not have any effect in regard to the seniority system. As the Supreme Court noted in *Franks v. Bowman Transportation Company, Inc.,* 424 U.S. 747, 778, 96 S.Ct. 1251, 1271, 47 L.Ed.2d 444 (1976):

> Certainly there is no argument that the award of retroactive seniority to the victims of hiring discrimination in any way deprives other employees of indefeasibly vested rights conferred by the employment contract. This Court has long held that employee expectations arising from a seniority system agreement may be modified by statutes furthering a strong public policy interest.

The defendant further argues that TWU must be joined in this action since TWU violated Section 4(c)(3) of the ADEA[4] and

should pay any monetary judgment equally with the defendant.

The court in *Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057 (S.D.N.Y., 1975) held that the language of section 6(d)(2) of the FLSA,[5] the section analogous to section 4(c)(3) of ADEA, led to the conclusion that there was no legal basis for recovery by an employer against a labor organization for contribution. That decision is persuasive as to the interpretation of Section 4(c)(3) of the ADEA, therefore, the defendant in this matter could not receive contribution from TWU.

■ As to whether the Secretary should proceed against TWU for injunctive relief, that decision is best left to the discretion of the Secretary of Labor.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

The parties in this action made cross motions for summary judgment. The issue before the court is whether the defendant is entitled to the exemption of section 4(f)(2) of the ADEA where the employees were retired pursuant to a retirement plan in which the retirement age was lowered after the passage of the ADEA.[6]

Section 4(f)(2) of the ADEA provided: (f) It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this [Act], except that no such employee benefit plan shall excuse the failure to hire any individual;[7]

---

4. Section 4(c)(3) of the ADEA provides: (c) It shall be unlawful for a labor organization—(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

5. Section 6(d)(2) of the FLSA provides:
No labor organization, or its agents, representing employees subject to any provisions of this section shall cause or attempt to cause such an

employer to discriminate against an employee in violation of paragraph (1) of this subsection.

6. The ADEA was enacted into law on December 15, 1967.

7. Congress amended section 4(f)(2) of the ADEA by adding: and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual

█ The exemption is an affirmative defense and must be pled and proven by the defendant. The defendant must show that it 1) observes the terms of the plan; 2) the plan was a bona fide employee benefit plan and 3) it is not a subterfuge to evade the purposes of the ADEA.

The Secretary did not contend that the defendant failed to observe the terms of the Plan nor that the Plan was not bona fide in the sense that it did not pay substantial benefits. Thus the court must determine whether the defendant's actions were "a subterfuge to evade the purposes" of the ADEA.

█ It is settled that when the Court interprets an exemption or exception to remedial legislation such as the ADEA, the exemption must be narrowly and strictly construed. *See, e. g. Piedmont & Northern Ry. Co. v. I.C.C.*, 286 U.S. 299, 311–312, 52 S.Ct. 541, 76 L.Ed. 1115 (1932); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).

While no appellate court has considered the particular issue before the court, the Supreme Court in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), the Fifth Circuit in *Taft*, supra, the Fourth Circuit in *McMann v. United Air Lines, Inc.*, 542 F.2d 217 (C.A. 4, 1976) and the Third Circuit in *Zinger v. Blanchette*, 549 F.2d 901 (C.A. 3, 1977) have considered the scope of section 4(f)(2) in regard to involuntary early retirement under retirement plans which prior to the passage of the ADEA had provisions by which employees were retired earlier than age 65.

The defendant urges that the Supreme Court in *McMann, supra,* adopted the definition of subterfuge of the Third Circuit in *Zinger,* supra. The Third Circuit held that where a retirement plan pays substantial benefits to the employees, involuntary early retirement regardless of when the lower age was established cannot be a subterfuge.

This court rejects the defendant's contention that the Supreme Court adopted the *Zinger* definition of subterfuge. The Supreme Court in *McMann, supra,* stated:

So limited we find nothing to indicate Congress intended wholesale invalidation of retirement plans instituted in good faith *before its passage,* or intended to require employers to bear the burden of showing a business or economic purpose to justify bona fide *pre-existing plans* as the Fourth Circuit concluded. (emphasis added).

434 U.S. 203, 98 S.Ct. at 450.

Further, Mr. Justice White in his concurring opinion, who urged that the *Zinger* definition of subterfuge be adopted, noted:

Because the Court relies *exclusively* upon the adoption date of United's retirement plan as a basis for concluding that McMann's forced retirement was not unlawful, I cannot join its opinion. Instead, I would adopt the approach taken by the Third Circuit in *Zinger v. Blanchette,* 549 F.2d 901 (C.A. 3, 1977), . . . (emphasis added).

434 U.S. at 207, 98 S.Ct. at 452.

The Supreme Court chose to follow the rationale of the Fifth Circuit in *Taft, supra,* and decided the issue of subterfuge by holding that the defendant could not have committed a subterfuge where the plan preceded the enactment of the ADEA.

Following the decision in *McMann,* the Ninth Circuit, in *Marshall v. Hawaiian Telephone Company,* 575 F.2d 763 (C.A. 9, 1978), reviewed the first case concerning the applicability of section 4(f)(2) to preexisting plans. There, the district court (*Dunlop v. Hawaiian Telephone Company,* 415 F.Supp. 330 (D.Haw. 1976)) had adopted the *Zinger* definition of subterfuge. However, on appeal the Ninth Circuit found the exemption applicable because the retirement occurred pursuant to a preexisting plan; thus following the rationale of *Taft, supra. Hawaiian Telephone Company,* 575 F.2d at 766.

specified by section 12(a) of this [Act] because of the age of such individual.

The plaintiff urges the Court to follow this language as the law at the time of decision;

however, since the Court has ruled for the plaintiff on other grounds, it is unnecessary to decide this issue.

Here, the plan was amended to lower the retirement age after the passage of the ADEA. This action by Eastern clearly constitutes a subterfuge to evade the purposes of the ADEA.[8] Eastern was specifically informed by TWU that its action in lowering the retirement age could constitute a violation of the ADEA. TWU then made a proposal which would bring the Plan into compliance with the ADEA. The defendant informed TWU that the Plan as amended was in compliance based on counsel's reading of *Taft, supra.* A fair reading of *Taft, supra,* does not lead to the conclusion that a post ADEA lowering of the retirement age was within the scope of section 4(f)(2). On the contrary, the majority in Taft clearly upheld the exemption because the involuntary early retirement was effectuated pursuant to the terms of a plan preexisting the enactment of the ADEA:

> Taft's "Plan" was instituted in 1963. Jones exercised his option to participate in 1963. The Act was approved December 15, 1967. Quite obviously, Congress sought to avoid legal and constitutional problems likely to arise from any ex post facto effort to invalidate existing employee benefit plans. Consequently, it included the Section 4(f)(2) exception.

*Taft, supra* at 215.

■ Furthermore, Judge Tuttle issued a vigorous dissent in *Taft.* Additionally, it is clear upon reading the opinion that the Secretary of Labor's enforcement position was that section 4(f)(2) would not allow involuntary early retirement. Despite the clear indications in *Taft, supra,* that the defendant's action of lowering the retirement age of its Plan may, in fact, be illegal, Eastern took a calculated risk and failed to bring the Plan into compliance with the ADEA. Age is that form of involuntary early retirement that is contrary to the

intent of Congress; this Court finds that age was the sole and only factor involved in the plan *sub judice.* Moreover, Eastern has presented no evidence to show that the early retirement amendment to its retirement plan had any business purpose other than arbitrary age discrimination. In the ordinary meaning of the word, therefore, Eastern's action clearly constituted a subterfuge to evade the purposes of the ADEA.

Three other district courts have had this particular issue before it. In *Marshall v. The Baltimore and Ohio Railroad,* 461 F.Supp. 362 (D.Md.1978) the court followed the rationale of *Zinger, supra,* and found since substantial benefits were paid that the exemption was applicable. However, the courts in *Davis v. Boy Scouts of America,* 457 F.Supp. 665 (D.N.J.1978), and *Marshall v. Atlantic Container Line,* 470 F.Supp. 71 (S.D.N.Y.1978),[9] found it necessary to determine the facts concerning the lowering of the retirement age, therefore rejecting the rationale of *Zinger, supra,* in regard to the definition of subterfuge. This court concurs with the holdings in *Davis, supra,* and *Atlantic Container Line, supra,* in rejecting the *Zinger* definition of subterfuge.

The ruling herein accords with the 1978 Amendments of Section 4(f)(2) which clarifies the original intent of Congress in enacting Section 4(f)(2); that is, that no retirement plan "shall require or permit the involuntary retirement of any individual . . . .". The report of the House on this matter stated:

> These amendments would also, therefore, clarify Section 4(f)(2) of the Age Discrimination in Employment Act so that employee benefit plans . . . cannot be

8. Although *McMann, supra,* does hold that a defendant can not have committed a subterfuge where the retirement plan preceded the passage of the ADEA, the Supreme Court did not imply, nor does the Department of Labor suggest, that the lowering of a plan's retirement age by amendment enacted after passage of the ADEA *ipso facto* constitutes a subterfuge. Moreover, the mere fact that Eastern's plan

was in existence long before the ADEA was enacted does not preclude the post-ADEA amendment from modifying the plan into a subterfuge.

9. The court's final ruling on the summary judgment motion is reported at *Marshall v. Atlantic Container Line,* 470 F.Supp. 71 (S.D.N.Y.1979).

an excuse for the involuntary retirement on account of age . . .[10]

The issue of injunction may be dealt with briefly. As the Fifth Circuit stated in *Hodgson v. First Federal Savings and Loan Association of Broward County, Florida,* 455 F.2d 818, 826 (C.A. 5, 1972):

It is to be noted that an injunction in this type of case is not a burdensome thing; it simply requires the employer to obey the law . . . The Labor Department ought not be charged with the responsibility for checking back on past violators to make certain they are obeying the law. Economy of administrative effort dictates that "after an employer has once violated the Act he should bear his own responsibility for the future." *Goldberg v. Cockrell,,* 303 F.2d 811, 814 (C.A. 5, 1962).

*See also, e. g., Hodgson v. Approved Personnel Service, Inc.,* 529 F.2d 760 (C.A. 4, 1975). Therefore, an injunction should issue.

■ The final issue remaining before the court is whether the violations were willful, which determines whether the two or three year Statute of Limitations of the Portal-to-Portal Act is applicable. Under the FLSA and the ADEA the issue of willfulness is an affirmative defense that must be pled and proven. *See e. g., Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (C.A. 5), *cert. denied,* 409 U.S 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *Brennan v. Heard,* 491 F.2d 1 (C.A. 5, 1974); *Dunlop v. Westinghouse Electric Corp.,* 11 EPD ¶ 10,814 (S.D. Fla.1976). The test of willfulness set forth in *Jiffy June, supra,* at 1142 is, "Did the employer know the FLSA was in the picture?" Therefore, the defendant must show that it did not and could not have known that its actions were governed by the ADEA.

THEREFORE, for the reasons stated, it is

ORDERED that defendant's motion for joinder be and hereby is DENIED. It is

FURTHER ORDERED that defendant's motion for summary judgment be and hereby is DENIED. It is

FURTHER ORDERED that an injunction should issue against the defendant enjoining the defendant from violating § 4(a) of the ADEA.

FURTHER ORDERED that the defendant shall, within twenty days of entry of this Order, submit any evidence it may have which it contends shows that it did not know and could not have known that its actions were governed by the ADEA.

10. H.R.Rep. 95–527, 95th Congress, 1st Session at 107–108. *See also* S.Rep. 95–493, 95th Congress, 1st Session at 152, 160 and additional views of Senator Jacob Javits; H.R.Rep. 95–527, 95th Congress, 1st Session, additional views of Honorable Ted Weiss.