645 F.2d 69
 26 Fair Empl.Prac.Cas. 272,
27 Fair Empl.Prac.Cas. 1686,
26 Empl. Prac. Dec. P 32,122
Unpublished Disposition
NOTICE: Fifth Circuit Local Rule 47.5.3 states that unpublished opinions should normally be cited only when they establish the law of the case, are relied upon as a basis for res judicata or collateral estoppel, or involve related facts. If an unpublished opinion is cited, a copy shall be attached to each copy of the brief.
Equal Employment Opportunity Commission, Plaintiff-Appellee
v.
Eastern Airlines, Inc., Defendant-Appellant.
 Docket No. 79-3960.
 United States Court of Appeals, Fifth Circuit.
 April 14, 1981.
 
 1
 Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE*, District Judge.
 
 
 2
 CLARK, C.J.
 
 
 3
 Eastern Airlines, defendant below, appeals a judgment which held that Eastern violated Section 4(a)(1), 29 U.S.C. Sec. 623(a)(1), of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621(a) et seq., (hereinafter the "Act"), by altering its "normal retirement age" from 65 to 62 after passage of the Act. The district court found that the lowered mandatory retirement provision was a "subterfuge to evade the purpose of the Act" and therefore was not exempt under Section 4(f)(2). We affirm.
 
 
 4
 The facts of the case were stipulated. Eastern Airlines instituted a retirement plan in 1947 known as the Eastern Airlines Fixed Benefit Income Plan for Flight Attendants which required participants to retire at age 65. On April 26, 1973, Eastern and the employee bargaining agent, the Transport Worker's Union (TWU), began renegotiating the retirement plan and, prompted by the Union's request, amended the collective bargaining agreement to provide for "normal retirement" at age 62. The amendment took effect on January 1, 1974.
 
 
 5
 On July 15, 1974, however, while the TWU was engaged in negotiations on a new contract, the TWU informed Eastern that Union counsel advised it that the lowered retirement age was of questionable legality under the Act. The TWU proposed, instead, that employees be given the opportunity to continue work until age 65. The issue was not discussed further until the final day of negotiations in the fall of 1974, when Eastern advised the Union that its own counsel believed the existing plan was in compliance with the Act based upon their understanding of an Age Discrimination in Employment Act (ADEA) case, Brennan v. Taft Broadcasting Co., 500 F.2d 212 (5th Cir.1974). Pursuant to the lowered retirement age, Eastern involuntarily retired seven flight attendants between July 1, 1974 and April 1, 1977. On July 1, 1977, Eastern and the TWU again altered the retirement plan to permit employees to work until age 65 if they so chose.
 
 
 6
 The issues on appeal may be stated as follows:
 
 
 7
 1. Did Eastern violate Sec. 4(f)(2) of the Act when it reduced the normal retirement age from 65 to 62 on January 1, 1974?
 
 
 8
 2. Assuming the reduction was illegal, is Eastern liable despite the fact that the Union initially requested the reduction during contract negotiations?
 
 
 9
 3. Assuming liability, was Eastern's violation "willful" for purposes of determining the statute of limitations under the Portal-to-Portal Act (29 U.S.C. Sec. 225)?
 
 
 10
 4. Whether the trial court erred in refusing to join the Transport Worker's Union as an indispensable party under Fed.R.Civ.Pro. 19?
 
 
 11
 The trial court placed the burden of proving the affirmative defense under exemption 4(f)(2) upon the defendant, and we agree with this allocation. The one claiming the benefits of an exception to a statutory prohibition has the burden of proving the applicability of that exception.[1] Section 4(f)(2) states:
 
 
 12
 (f) It shall not be unlawful for an employer, employment agency, or labor organization--
 
 
 13
 ...
 
 
 14
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as retirement, pension, or insurance plan, which is not a subterfuge to evade the purpose of this chapter, except no such employee benefit plan shall excuse the failure to hire any individual; ...[2]
 
 
 15
 In considering whether Eastern violated the Act, we consider first Brennan v. Taft Broadcasting Co., 500 F.2d 212 (5th Cir.1974), because of the fact that Eastern relied upon this case in response to the TWU position that the amended retirement age was illegal. Taft involved an action to enjoin an alleged ADEA violation where an employee was involuntarily retired at age 60. The company defended the discharge under the Sec. (f)(2) exception, and this court agreed that the Retirement Plan was "a bona fide employee benefit plan ... which is not a subterfuge to avoid the purpose of this Act." Brennan v. Taft Broadcasting Co., 500 F.2d at 213. In so holding, the court emphasized the timing of the Act's passage in relation to Taft's adoption of the challenged retirement plan:
 
 
 16
 Taft's "Plan" [retirement benefit plan] was effectuated far in advance of any enactment of the law, eliminating any notion that it was adopted as a subterfuge for evasion.
 
 
 17
 Id., at 215.
 
 
 18
 This language is significant to our present inquiry because of the argument Eastern puts forth. Eastern maintains that under Taft any retirement plan which is "bona fide," in the sense that the plan "is genuine and actually pays substantial benefits,"[3] is necessarily defensible within the Sec. 4(f)(2) exemption. Based upon its reading of Taft, Eastern argues that the involuntary retirement of these seven employees was permissible because their retirement was pursuant to a "bona fide" retirement plan. But this interpretation is overly simplistic. In addition to requiring the defendant to prove its retirement plan was "bona fide," Taft imposed a second burden upon the employer--the burden of establishing that the plan was not a "subterfuge to evade the act." In concluding that it was not, the court stressed one fact: the plan had been adopted prior to the ADEA's passage. Consequently, Taft could not have intended to "evade" an Act not in existence.
 
 
 19
 In the instant case, however, Eastern's retirement plan was amended subsequent to passage of the Act, and therefore we may not automatically rule out the possibility that the plan was a "subterfuge." Contrary to Eastern's interpretation, Taft imposed two distinct burdens upon those employers seeking to fall within the protection of Section 4(f)(2)--first, establish that the plan is bona fide; second, establish that the plan was not adopted as a "subterfuge" to evade the act. The trial court properly focused its attention on both these inquiries[4] and concluded that, despite Eastern's payment of substantial benefits, Eastern had failed to prove that the amended plan was not a subterfuge. We agree.
 
 
 20
 A careful review of those cases which have considered the "subterfuge" question lends strong support to the trial court's analysis. In United Air Lines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444 (1977), for example, the Supreme Court considered whether the involuntary retirement of an employee before age 65 was permissible pursuant to a "bona fide" retirement plan established prior to passage of the Act. In concluding that the retirement fell within the scope of Section 4(f)(2), the Court stated:
 
 
 21
 [W]e find nothing to indicate Congress intended wholesale invalidation of retirement plans instituted before its [ADEA's] passage, or intended to require employers to bear the burden of showing a business or economic purpose to justify bona fide pre-existing plans as the Fourth Circuit concluded. In ordinary parlance, and in dictionary definitions as well, a subterfuge is a scheme, plan, stratagem, or artifice of evasion.... [S]o read, a plan established in 1941, if bona fide ... cannot be a subterfuge to evade an Act passed 26 years later.
 
 
 22
 Id., 434 U.S. at 195, 98 S.Ct. at 450 (emphasis added). The Supreme Court's analysis turned on the date of the plan's adoption; as a matter of common sense, pre-Act plans could not have been adopted with an intent to circumvent the Act.
 
 
 23
 As suggested in McMann, and as reflected in the legislative history, the enacting Congress was concerned about the effect which the Act would have upon those retirement plans already in existence. Concerned about "wholesale invalidation," Sec. 4(f)(2) was enacted in order to "grandfather" those pre-existing retirement plans which might not otherwise have survived judicial scrutiny under the new guidelines. The legislative history strongly supports this interpretation, as for example, where then Secretary of Labor Willard Wirtz was asked what effect the Act would have upon existing pension plans, his response was:
 
 
 24
 It would be my judgment ... that the effect of the provision in 4(f)(2) ... is to protect the application of almost all plans which I know anything about.[5]
 
 
 25
 Furthermore, other circuit courts of appeals which have interpreted the subterfuge language have based their reasoning upon the fact that the challenged plans had been adopted prior to the Act. Hence, the Seventh Circuit, in Minton v. Whirlpool Corp., 569 F.2d 1012, 1013 (1978), upheld a "bona fide" pension plan based upon the fact that "there was no dispute over the fact that the defendant's plan was in effect before the enactment of the ADEA"; the Ninth Circuit, in Marshall v. Hawaiian Telephone Company, 575 F.2d 763, 766 (9th Cir.1978), upheld a pension plan in reliance upon McMann, supra, reasoning "that [the defendant] Hawtel established its retirement plan in 1931 and the Secretary now concedes that after McMann, Hawaiian Telephone's plan, if bona fide, cannot be a subterfuge to evade the purposes of the ADEA"; and the Fifth Circuit in Mason v. Lister, 562 F.2d 343, 356 (1977), upheld a retirement scheme pursuant to Sec. 4(f)(2) on the basis that "[t]his court has also previously noted that where a retirement scheme predates ADEA, as does the instant program, it is highly unlikely that the plan is a subterfuge to evade the Act."
 
 
 26
 None of these cases, however, addressed the question whether a pension plan amended subsequent to the Act, was a "subterfuge to evade the Act." We are left with only one circuit court of appeals case which directly considered the question. In Smart v. Porter Paint Co., 630 F.2d 490 (7th Cir.1980), the employer amended its retirement plan effective January 1, 1976, and the plaintiff was involuntarily retired thereunder. After suit was filed, the company's Director of Personnel submitted an affidavit which stated that the amended plan "was drafted and approved by legal counsel as complying with all applicable laws including the Age Discrimination in Employment Act." 630 F.2d at 492. Despite the employer's apparent good faith, the court held that Porter had presented insufficient evidence to permit the court to conclude, as a matter of law, that the plan fell within the statutory exception. Specifically, the court stated:
 
 
 27
 McMann established that the term "subterfuge" was to be given its ordinary meaning and strongly implied that evidence of an employer's intent, including its business or economic purpose, may, under some circumstances, be relevant to the question whether a plan which authorizes retirement before age 65 is a subterfuge.... [T]his does not preclude us from requiring that the employer must state some nondiscriminatory purpose or purposes for its actions if it adopts or amends a plan after 1967 and wishes to avail itself of the Sec. 4(f)(2) exemption.
 
 
 28
 In light of Smart, we are persuaded that, when an employer amends its retirement plan subsequent to passage of the Act, the burden is especially onerous upon that employer to demonstrate lack of wrongful intent and, absent an affirmative showing of nondiscriminatory purpose, the court is justified in finding a violation.
 
 
 29
 In the instant case the sole nondiscriminatory purpose advanced by Eastern is that the amended retirement age was negotiated pursuant to a collective bargaining agreement. Eastern argues, therefore, that because the retirement age was instituted at the request of TWU, Eastern could not have intended to evade the Act. This argument might have some force were it not for the fact that during negotiations this court issued the opinion in Brennan v. Taft Broadcasting Company, supra. Counsel for the airline was clearly aware of the decision, the case being cited to the Union in response to their objections to the previously negotiated amendment. Having considered Taft, counsel for the airline should have been aware that two burdens would be placed upon employers instituting post-Act amendments to their retirement plans, and that mere proof that the plans were "bona fide" would have discharged only one of those burdens. Furthermore, despite the Union's initial request for the lowered retirement age in April, 1973, the TWU had withdrawn this position by July, 1974. Eastern's continued adherence to the amended plan in the fact of the Union's changed position and in light of this court's reasoning in Taft persuades us that Eastern failed to establish a nondiscriminatory purpose for its actions, and therefore the trial court was justified in concluding that the amendment was a "subterfuge."
 
 
 30
 Having considered the primary substantive issues, we turn to the questions whether the district court properly held that Eastern's violation was "willful" for the purpose of determining the statute of limitations under the Portal-to-Portal Act, and whether the district court properly refused to join the Transport Workers' Union as an indispensable party?
 
 
 31
 Regarding the imposition of the three-year statute of limitations pursuant to the Portal-to-Portal Act (29 U.S.C. Sec. 255(A))[6] Eastern objects to the Trial court's finding that Eastern's violation was "willful." Eastern's contention is that its actions were taken in reliance upon the Department of Labor's official interpretation of Sec. 4(f)(2), and that this reliance negates bad faith and willfulness. Our court has held that a party's violation committed in good faith may nevertheless be willful. In Coleman v. Jiffy Jim Farms, Inc., 458 F.2d 1139, 1141 (5th Cir.1972), Judge Wisdom addressed "the question whether a violation committed in good faith may yet be willful," and concluded that it could. Consequently, while the record reflects no bad faith on the part of Eastern, we are bound by the interpretation of "willful" given in Coleman, and we therefore affirm.
 
 
 32
 Finally, in considering whether the Transport Workers' Union was an indispensable party pursuant to Fed.R.Civ.Pro. 19, we look to that rule for guidance. Under subsection (a), persons to be joined if feasible include a party in whose "absence complete relief cannot be accorded among those already parties," or, a party so situated that the disposition of the action in his absence "may have a prejudicial effect on his ability to protect his own interests."[7] Because Eastern's liability is not predicated upon the Union's action, we see no reason why the TWU would fall within the scope of either category. Furthermore, Eastern has failed to demonstrate any fact to support their contention that the Union would be an indispensable party under Rule 19. We therefore affirm the trial court's refusal to join the Union.
 
 
 33
 Affirmed.
 
 
 
 *
 District Judge of the Northern District of Alabama, sitting by designation
 
 
 [1]
 See United States v. First City National Bank of Houston, 386 U.S. 361, 87 S.Ct. 1088 (1967)
 
 
 [2]
 29 U.S.C. Sec. 623(f)(2)
 
 
 [3]
 Marshall v. Hawaiian Telephone Company, 575 F.2d 763, 766 (9th Cir.1978)
 
 
 [4]
 We need not consider here whether Eastern "observed the terms of" the plan as that phrase was interpreted in Marshall v. Hawaiian Telephone Company, 575 F.2d 763 (9th Cir.1978), where the court rejected the contention "that an employer does not 'observe the terms of' a plan by exercising the option permitted by a plan to force retirement on an employee." Here, neither party contends that Eastern did not "observe the terms" of the plan, the sole question being whether such observance was lawful
 
 
 [5]
 Hearings on S.830 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 90th Cong., 1st Sess., 53 (1967)
 
 
 [6]
 29 U.S.C. Sec. 225(a) states in relevant part:
 (a) If the cause of action accrues on or after May 14, 1947,--may be commenced within two years after the cause of action accrued ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.
 
 
 [7]
 Wright & Miller, Federal Practice and Procedure (1971), Civil Sec. 1604