562 F.2d 343
 17 Fair Empl.Prac.Cas. 292, 15 Empl. Prac.
Dec. P 7929
Curtis C. MASON, Plaintiff-Appellant,
v.
Jack R. LISTER, Personnel Officer, Johnson Space Center,
National Aeronautics and Space Administration,
Defendant-Appellee.
 No. 77-1688
Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Nov. 4, 1977.
 
 Curtis C. Mason, pro se.
 James R. Gough, U. S. Atty., R. Burton Ballanfant, Asst. U. S. Atty., Houston, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, RONEY and HILL, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Plaintiff, a 46-year-old federal employee with 21 years of government service, sought to retire with an annuity under the Federal Employees Early Retirement Act, 5 U.S.C.A. § 8336. Because that statute requires employees under age 50 to have 25 years' service before claiming an annuity, plaintiff's request was denied. He then brought the instant suit claiming that the federal retirement provisions violated, and were impliedly repealed by, the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621 et seq., and were void under the Due Process Clause of the Fifth Amendment. The trial court granted the defendant personnel officer's motion for summary judgment. We affirm.
 
 
 2
 Plaintiff is an employee of the Johnson Space Center in Houston, Texas, a federal facility administered by N.A.S.A. Because of substantial personnel cutbacks at the N.A.S.A. Flight Center in Huntsville, Alabama, the Civil Service Commission determined that the agency was undergoing a major reduction in force (RIF) during the period December 11, 1974 through February 28, 1975, thus activating the early retirement provisions of 5 U.S.C.A. § 8336(d)(2) (1977 Supp.). The statute is designed to encourage more senior employees to leave the work force of an agency voluntarily at an earlier than usual age to minimize the necessity of laying off younger employees during a period of staff reduction. The statute states:
 
 
 3
 An employee who is separated from the service . . . voluntarily, during a period when the agency in which he is employed is undergoing a major reduction in force, as determined by the Commission, . . . after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.
 
 
 4
 When plaintiff sought to claim benefits under this statute during the two and half months that it applied to his agency he was under 50 but had over 20 years of service. After the defendant informed him of his ineligibility he launched the instant attack on the statute.
 
 
 5
 Plaintiff first claims that he is entitled to a default judgment. After defendant's motion to dismiss was denied, the defendant filed no further pleadings for over five weeks, despite Fed.R.Civ.P. 12(a)(1), requiring a response within 10 days after the denial of a pre-answer motion. Generally, the entry of default judgment is committed to the discretion of the district judge. Wright & Miller, Federal Practice and Procedure, Civil § 2685. "(W) hen the government's default is due to a failure to plead . . . the court typically either will refuse to enter a default or, if a default is entered, it will be set aside." (footnotes omitted). Id., Civil § 2702 at p. 355. Furthermore, under Fed.R.Civ.P. 55(e) "(n)o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." Since the government responded to the motion for default judgment promptly, indicating that it had not abandoned the litigation, and since the district court ultimately found plaintiff's claim unable to withstand summary judgment, the refusal to enter the default was not an abuse of discretion.
 
 
 6
 Plaintiff's initial attack on the merits is his claim that the retirement scheme here under scrutiny conflicts with the Age Discrimination in Employment Act (ADEA). That Act requires all personnel action affecting federal employees to be free of discrimination based on age. 29 U.S.C.A. § 633a. Since the age discrimination law was enacted in 1974, while the early retirement statute was enacted in 1973, plaintiff contends that ADEA must prevail.
 
 
 7
 Although it makes age discrimination illegal, ADEA provides elsewhere that "(i)t shall not be unlawful for an employer . . . to observe the terms of . . . any bona fide employee benefit plan such as a retirement . . . plan which is not a subterfuge to evade the purposes of this chapter." 29 U.S.C.A. § 623(f). As plaintiff points out, this provision does not apply to the federal government because the government is excluded from the relevant definition of "employer," found in 29 U.S.C.A. § 630(b). Nonetheless, the legislative history makes it clear that Congress intended the federal government to have both the same obligations and flexibility as do private employers. See, e. g., H.R.Rep.No.913, 93d Cong., 2d Sess. (1974) reprinted in (1974) U.S.Code Cong. & Admin.News, p. 2850. This naturally includes the right to administer legitimate retirement programs. See Bradley v. Kissinger, 418 F.Supp. 64 (D.D.C.1976).
 
 
 8
 Thus the ADEA itself exempts conduct by the government as an employer pursuant to a bona fide retirement plan unless the plan is designed as a subterfuge to evade the purposes of the Act. Here, the retirement scheme established under 5 U.S.C.A. § 8332(d)(2) could not be a subterfuge because it is strictly optional with the employees. It does not give the government the power to forcibly retire older workers, and thus does not conflict with the Congressional goal of promoting "employment of older persons based on their ability rather than age." 29 U.S.C.A. § 621. This Court has also previously noted that where a retirement scheme predates ADEA, as does the instant program, it is highly unlikely that the plan is a subterfuge to evade the Act. Brennan v. Taft Broadcasting Co., 500 F.2d 212 (5th Cir. 1974). But see McMann v. United Air Lines, 542 F.2d 217 (4th Cir. 1976), cert. granted, 429 U.S. 1090, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1977). Thus we find no conflict between the Federal Employees Early Retirement Act and ADEA, and reject the statutory challenge.
 
 
 9
 As an alternate course of attack plaintiff claims that the retirement scheme under consideration violates the equal protection component of the Fifth Amendment Due Process Clause. "Under traditional equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest." U. S. Department of Agriculture v. Moreno, 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The "strict scrutiny" equal protection test, requiring the government to demonstrate that the legislative classification is necessary to a compelling government interest, only applies if fundamental rights are at stake, Eisenstadt v. Baird, 405 U.S. 438, 447 n. 7, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), or if a suspect class is involved, Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Since the right to retire on a government pension does not derive from the Constitution, it is not fundamental, see San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), and since age has not been held by any court to constitute a suspect class, the plaintiff, to recover would need to show that the age classification is wholly irrational. This he has failed to do. The intent of Congress was "to save the jobs of younger workers, by giving senior employees who have 25 years of service or 20 years and have reached age 50, the option to retire voluntarily once a RIF is announced but before it is actually effected." Statement of Representative Jerome Waldie, Chairman, House Committee on Post Office and Civil Service, --- Cong. Record E907 (daily ed. Feb. 21, 1973). The Senate Committee Report on the Bill which eventually was enacted as Public Law 93-39, referred to letters from the Chairman of the Civil Service Commission which in pertinent part stated:
 
 
 10
 The proposed legislation would be of inestimable benefit to employees, management, and the community in which an installation undergoing a reduction in force is located. Reductions in force have a depressing effect on employee morale and result in severe personal hardships caused by loss of income and uncertainty regarding future employment. Major reductions in force, through multiple "bumping" actions, also have a disruptive effect on agency management. To the extent that attrition, particularly in retirement, reduces the need for involuntary separations and the chain-effect displacement of employees with lower retention rights of those with higher retention rights, these hardships and disruptions are mitigated.
 
 
 11
 In a small community where a federal installation is a main source of employment, a major reduction in force may adversely affect the community's economy. In a larger community, the release of many employees in some occupational categories may place in an already troubled labor market people for whom there are no comparable occupations in the private sector. Permitting people to retire on annuity income and spreading voluntary retirements throughout an entire department or agency, or a subdivision of the department or agency, as the attached legislation proposes, would at least moderate these adverse affects of reductions in force on the community.
 
 
 12
 Another benefit to be derived from the proposed legislation is that it would enhance the agency's future effectiveness in carrying out its mission by helping to retain younger employees. Nothing raises the average age of an organization more quickly than a substantial reduction in force in which the youngest employees with the lowest retention standing are separated and the oldest employees are retained.
 
 
 13
 Under present law, an employee who is at least age 50 and has at least 20 years of (service), or 25 years of service regardless of age, may retire on an immediate annuity if he is involuntarily separated, as when he (is) reached by reduction in force. Unless the employee is old enough and has sufficient service to retire optionally (age 55 with 30 years of service, age 60 with 20, or age 62 with 5), if he has not reached for reduction in force, he does not have the right to retire even if he is desirous of doing so, and thus (the law permits) an employee who wants to continue to work to be retained. The proposed legislation would simply give the long service employee who is not eligible to retire under the regular optional retirement provisions of the law the opportunity to retire voluntarily during the limited period when his agency is undergoing a major reduction in force.
 
 
 14
 S.Rep.No.152, 93rd Cong., 1st Sess. 4-5 (1974).
 
 
 15
 It may be seen from this legislative history that these purposes are obviously a rational way to further a legitimate governmental interest or purpose.
 
 
 16
 The line drawn at age 50 is arbitrary of course, but where it is rational to draw a line somewhere the placement of the line is for the legislature.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I