Edward C. **WINGFIELD**

v.

**UNITED TECHNOLOGIES CORPORATION.**

**Civ. No. H–84–262(MJB).**

United States District Court, D. Connecticut.

Feb. 3, 1988.

Richard Blumenthal, David S. Golub, Silver, Golub & Sandak, Stamford, Conn., for plaintiff.

Robert A. Brooks, Albert S. Zakarian, Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS AND MOTION IN LIMINE

BLUMENFELD, Senior District Judge.

In this action, plaintiff, a former employee of defendant, seeks to recover damages

for alleged violations of the Age Discrimination in Employment Act (ADEA).[1] Shortly before this case was originally scheduled for trial, defendant filed a "Motion in Limine" in which defendant asked this court to (1) exclude evidence with respect to the 1977, 1979, and 1981 instances of discrimination on the grounds that those incidents are not actionable, (2) exclude evidence of "constructive discharge" in 1987 on the grounds that a claim of constructive discharge has never been raised in any charge of discrimination to the EEOC, and (3) exclude certain "statistical evidence." At conference before trial, the court and the parties agreed that defendant's motion should be recast, in part, as a motion for summary judgment. Trial was postponed and, as directed, defendant submitted its motion for summary judgment with respect to the 1977, 1979, and 1981 acts of discrimination. Oral argument was heard on January 19, 1988.

### FACTS

From 1962 to 1987, plaintiff, Edward C. Wingfield, was employed by defendant, United Technologies Corporation, at defendant's East Hartford Research Center facility. In 1966, plaintiff was promoted to the position of Assistant Manager of Engineering Operations. Plaintiff contends that in 1976 defendant adopted a "policy or plan at the Research Center to purge mid-level management at 55 years of age or older and replace such older employees with younger personnel." Plaintiff claims that pursuant to this plan defendant discriminated against him on four occasions:

(1) In 1977, defendant is alleged to have forced the then Manager of Engineering Operations to accept "voluntary" retirement. Defendant did not promote plaintiff to fill the vacancy created by the manager's retirement. Instead, defendant promoted James W. Clark to the position. Plaintiff claims that Clark was less qualified than plaintiff to fill the position, but that Clark was selected because he was younger than plaintiff.

(2) In 1979, plaintiff was removed from his position as an assistant manager, placed in a non-managerial position, and demoted from grade 52 to grade 50. A younger employee replaced plaintiff as assistant manager.

(3) In 1981, plaintiff was denied a promotion that went instead to a younger employee. Plaintiff claims that when he refused to retire, he was treated unfairly at work.

(4) In 1982, plaintiff refused to accept early retirement and was demoted.

Following his demotion in 1982, plaintiff filed a charge of age discrimination against defendant with the Connecticut Commission on Human Rights and Opportunities and with the EEOC. Two years later, plaintiff commenced this lawsuit.

### DISCUSSION

I. *Motion for Summary Judgment*

A plaintiff may not bring an action in federal court based on a claim of age discrimination "unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing the claim with the EEOC and within the scope of the EEOC investigation reasonably expected to grow out of that filing." *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23–24 (2d Cir.) (citations omitted), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed. 2d 122 (1985). Defendant contends that plaintiff never filed an EEOC charge with respect to the 1977, 1979, and 1981 incidents and that the claims pertaining to those incidents are time barred. Plaintiff responds that those claims were in fact presented to the EEOC and that the time period for filing with the EEOC was satisfied because defendant's actions were part of a single continuing violation. Plaintiff also argues that defendant should be estopped from raising a statute of limitations defense.

A. *Plaintiff Presented His Claims in His Administrative Charge*

■ Because Connecticut has its own age discrimination law, plaintiff first filed

---

1. 29 U.S.C. §§ 621–34 (1982 & Supp. III 1985).

his charge of age discrimination with the Connecticut Commission on Human Rights and Opportunities. *See* 29 U.S.C. § 633(b). Although the first page of the administrative charge refers only to plaintiff's 1982 demotion, the charge also refers at page 2 to an attached "summary of events leading to my demotion." That summary describes the 1977, 1979, and 1981 incidents. Because the charge incorporates that summary, plaintiff's action in this court is "within the scope of the EEOC investigation reasonably expected to grow out of that filing," *Miller*, 755 F.2d at 23–24, and this court believes that plaintiff has filed an administrative charge with respect to all four incidents of alleged discrimination.

**B.** *Plaintiff's Claims Are Time Barred*

 In Connecticut, an EEOC charge of age discrimination must be filed the earlier of (1) 300 days after the alleged discrimination occurred or (2) 30 days after receipt of notice of termination of proceedings under state law. *See* 29 U.S.C. § 626(d).[2] Plaintiff's EEOC charge was not filed until October 25, 1982—well beyond 300 days from the occurrence of the separate and distinct different acts of alleged discrimination in 1977, 1979, and 1981.[3] Plaintiff argues, however, that his EEOC charge was timely brought because defendant's actions were part of a continuous violation. The court agrees with plaintiff that if there is evidence that would

support a jury finding that defendant engaged in a continuous violation and that the 1982 act of discrimination was part of that continuing violation, then disposal of this case at summary judgment on the grounds that plaintiff's actions are time barred would be · improper.[4] "When employees are hired or refused employment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it, provided such a continuing violation is clearly asserted both in the EEOC filing and in the complaint." *Miller*, 755 F.2d at 25 (citations omitted).[5] The court finds, however, that plaintiff has not produced evidence sufficient to establish the existence of a continuing violation.

**1.** *In This Circuit The "Continuing Violation" Doctrine is Not an Equitable Doctrine*

 Defendant argues that an event cannot be the subject of a continuing violation if "in fairness and logic, [the otherwise time-barred act] should have alerted the average lay person to protect his rights." *Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 585 (D.Minn.1978). Defendant's contention is supported by a line of cases handed down by the Court of Appeals for the Fifth Circuit. In that circuit, a plaintiff may "establish that a continuing violation

---

**2.** Assuming that a claim has been properly raised with the EEOC, it must be brought in federal court within two years of the discriminatory action for non-willful violations or within three years of the discriminatory action for willful violations, although the limitation period may be tolled for up to one year "for the time during which the EEOC attempts to obtain voluntary compliance with the Act." *Miller*, 755 F.2d at 24. *See* 29 U.S.C. § 626(e). This lawsuit was not filed until after both the two-year statute of limitations and the three-year statute of limitations had expired. As with the time period for filing with the EEOC, however, the commencement of the limitation period for filing a complaint in federal court is tolled if there has been a continuing violation. *See Miller*, 755 F.2d at 25.

**3.** Plaintiff's affidavit and complaint reveal that the 1981 discriminatory acts occurred in February and March of that year.

**4.** The burden is on plaintiff to establish that there has been a continuing violation. *See La-Beach v. Nestle Co.*, 658 F.Supp. 676, 686–87 (S.D.N.Y.1987) ("[P]laintiff must establish a present and ongoing violation...."). Because plaintiff bears the burden of proof on this issue, he must produce sufficient evidence for a jury to find that there has been a continuing violation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**5.** Because the court finds that plaintiff has not presented facts sufficient to support his claim of a continuing violation, it is not necessary to determine whether a continuing violation is "clearly asserted both in the EEOC filing and in the complaint." *Miller*, 755 F.2d at 25.

occurred by showing (1) that some 'independent actionable conduct' occurred during the statutory period ... and (2) that [the plaintiff] did not know and could not reasonably be expected to have realized that the [earlier act of] discrimination was itself actionable until within [the statutory period]." *Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1561 (5th Cir.1985). According to the court in *Glass,* the "core idea" of the law of continuing violations "is that '[e]quitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.'" *Id.* at 1560 (quoting *Dumas v. Town of Mount Vernon,* 612 F.2d 974, 978 (5th Cir.1980)).

Had this case arisen in the Fifth Circuit, it would be a simple matter to conclude that there has been no continuing violation because the record clearly shows that plaintiff was aware that the 1977, 1979, and 1981 acts of discrimination were actionable within the 300–day limit for filing with the EEOC. As plaintiff correctly points out, however, Second Circuit case law on the subject of continuing violations has not required that plaintiffs have been unaware of the discrimination or their right to seek redress in order to take advantage of a continuing violation. Although the Second Circuit Court of Appeals has not expressly disagreed with the Fifth Circuit, this court has not found any case in which the court of appeals, in making a determination of whether there has been a continuing violation, has inquired into the plaintiff's knowledge at the time his rights were violated. *See, e.g., O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820–22 (2d Cir.1985) (in refusing

to find a continuing violation, the court did not discuss whether plaintiff, an attorney, had been aware that his rights were violated). *Glass* does not reflect the law of this circuit. This conclusion is buttressed by an examination of the facts of cases in which the Second Circuit has found a continuing violation. Those cases reveal that the continuing violation doctrine in this circuit is not predicated upon equitable considerations of whether the plaintiff knew or should have known that he had a claim of discrimination prior to the running of the limitation period. *See, e.g., Cook v. Pan Am. World Airways, Inc.,* 771 F.2d 635, 646–47 (2d Cir.1985) (actions taken pursuant to seniority system contained in arbitration award found to be part of continuous violation even though the arbitration award had been published by the employer almost two years before the seniority system was implemented), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274–75 (2d Cir.1981) (discrimination described as "clear-cut" and "egregious" constituted a "continuous policy of discrimination"), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

■ Since equitable considerations are not a prerequisite to a continuing violation in this circuit,[6] the basis for determining that a continuing violation obviates the need to comply with the limitation period is apparently an interpretation of the statute. It is the opinion of this court, however, that applying a theory of continuing violation to avoid the bar of the time limit imposed by the ADEA is contrary to the purpose of the statute.[7] The ADEA directs the EEOC

---

6. This is not to say that the point at which a plaintiff learns of the facts giving rise to his age discrimination claim is irrelevant. A plaintiff's knowledge of the basis of his cause of action is an important consideration for "the federal doctrine of equitable tolling," a doctrine which "has been invoked by age discrimination plaintiffs." *Cerborne v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985). The facts of this case do not permit an equitable tolling of the statute of limitations.

7. No claim is made that the ADEA itself extends the relevant filing period in the case of a continuing violation. The ADEA time limitation provisions are not like some statutes of limitation that expressly toll the running of the period until the occurrence of a certain event. *See, e.g.,* Conn.Gen.Stat.Ann. § 52–577a(a) (West Supp.1987) (as amended by 1987 Conn. Acts 537 § 12(a) (Reg. Sess.), *reprinted in* 1987 Conn. Legis. Serv. No. 7, 425, 430 (West)) (product liability claim must be brought within three years from date when injury is discovered "or in

upon receiving a charge of age discrimination "to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). The statute is clear that the EEOC's obligation to attempt reconciliation is not limited to rectifying past discrimination in the case of one employee, but to affect the employer's conduct thereafter with respect to all employees. Without timely action by the injured employee, the EEOC cannot accomplish the purpose mandated by statute. *See Comfort v. Rensselaer Polytechnic Inst.*, 575 F.Supp. 258, 260 (N.D.N.Y.1983) ("The filing requirements of the ADEA are designed to give the EEOC an opportunity to effect conciliation, and failure to properly file circumvents this scheme."). Nevertheless, while this court might prefer the limitation imposed on the continuing violation doctrine as developed in the Fifth Circuit, "[t]he fact that contrary views have been expressed by Courts of Appeals for other circuits would not authorize me to reject the reasoning of my own Circuit Court of Appeals." *Southern New England Distrib. Corp. v. Berkeley Fin. Corp.*, 30 F.R.D. 43, 49 (D.Conn.1962).

### 2. *Plaintiff Has Not Satisfied The Test For a Continuing Violation*

 The fact that defendant's treatment of plaintiff on four occasions may have violated the ADEA does not establish that there has been a continuing violation of the sort that obviates the need for timely filing. To establish that defendant engaged in a continuing violation, plaintiff must produce competent evidence of a "continuous practice and policy of discrimination." *Miller*, 755 F.2d at 25. In this circuit, plaintiff's awareness at the time that the 1977, 1979, and 1981 incidents were actionable is irrelevant to the ques-

tion of whether there was a continuing violation. Instead, a continuing violation is established by showing either (1) that the four incidents of discrimination against plaintiff constitute " 'a series of related acts' " or (2) that defendant's actions were taken pursuant to " 'the maintenance of a discriminatory system both before and during the [limitation] period.' " *LaBeach*, 658 F.Supp. at 686 (quoting *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C.Cir.1982)). The proof needed to establish a series of related acts is different from the proof needed to establish that an employer's actions were taken pursuant to a continuous policy of discrimination. When a plaintiff claims that acts of discrimination constitute a series of related acts, "it must be clear that the acts complained of are not completed, distinct occurrences." *Yokum v. St. Johnsbury Trucking Co.*, 595 F.Supp. 1532, 1534 (D.Conn. 1984). Discrete violations of different character and time do not necessarily fit into a pattern of a continuing violation, and "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Even if several acts are not a "related series," they might be regarded as continuing if subject to a discriminatory system, policy, or plan. In order to show that the defendant's actions were part of a discriminatory system, plaintiff must produce admissible evidence which shows that, with respect to mid-level management at the Research Center, age "discrimination was [defendant's] standard operating procedure—the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977).[8]

the exercise of reasonable care should have been discovered").

**8.** Although *Teamsters* addressed the question of what a plaintiff needs to show in order to establish a "pattern or practice" of discrimination for purposes of determining whether a defendant has violated Title VII at all, *see* 431 *U.S.* at 334–35, 97 S.Ct. at 1854–55, the court sees no

reason why *Teamsters* and other cases that discuss "pattern or practice" of discrimination are not also relevant for purposes of deciding whether there has been a continuing practice or policy of discrimination that would permit plaintiff to bring his otherwise time-barred claims.

*a. The Evidence Does Not Support a Finding That Defendant Maintained a Discriminatory System*

 According to plaintiff, "defendant initiated and maintained a company-wide policy of seeking to remove employees 55 years of age or older from its mid-management work force and replace them with substantially younger employees." To support this claim, plaintiff points to the adverse actions taken against plaintiff, as described above, and the following facts:

(1) In 1976, defendant adopted an early retirement plan, the "Career Service Plan," and forced the manager of the Research Center to accept early retirement.

(2) The manager position was filled by James W. Clark, a young assistant manager with less experience and qualifications than either plaintiff (then an assistant manager) or another older assistant manager. The vacancy left by Clark's promotion was filled with another young employee.

(3) Clark established the following management objectives:

a. reducing the engineering staff at the Research Center lab by three percent (stated in a memorandum prepared by Clark as "achiev[ing] an average turnover rate ... of at least three (3) percent");

b. replacing employees every five years (stated orally by Clark to plaintiff in a meeting);

c. replacing lab employees with new employees at a lower salary.

(4) From 1977 through 1982, the two youngest assistant managers received larger annual salary increases than the third, and older, assistant manager. By 1983, the two younger assistant managers were earning more than the older assistant manager.

(5) In 1981 and 1982, defendant adopted additional early retirement plans.

(6) "[N]o grade level 48 through 53 employees over the age of 55 were promoted within the Engineering Operations function at the Research Center from 1976 through 1984; of 36 promotions given to grade level 48–54 at the entire Research Center during that period, only three went to individuals over the age of 55."

(7) Some of the employees at the Research Center were asked several times whether they would be willing to accept early retirement.

(8) In 1982, Thomas W. Wraight wrote a memo indicating that two employees at the Research Center had been given a choice between transfer and downgrade or early retirement.

This evidence does not establish the existence of a system of discrimination or a continuous policy of discrimination.

The "statistics" presented by plaintiff—that only three older employees in grades levels 48–54 were promoted over an eight year period—are not probative of any discriminatory system. Although these statistics are presented to prove that defendant adopted a policy to purge the Research Center of older mid-level managers, the court observes that the record[9] also shows a net increase in the number of grade level 50–52 employees age 60 or older over the same period. More importantly, however, the statistics describing the number of promotions are meaningless in the absence of expert interpretation as to the extent that the result documented—three out of 36 promotions going to persons over 55—differs from the result one would expect had promotions been made at random (the expected result). As the Supreme Court noted in *Hazelwood School Dist. v. United States*, 433 U.S. 299, 309 n. 14, 97 S.Ct. 2736, 2742, n. 14, 53 L.Ed.2d 768 (1977), the "precise method" for measuring statistical disparities "involves calculation of the 'standard deviation' as a measure of predicted fluctuations from the expected value of a sample." For large samples, if the difference between the expected and the observed result is greater than two or three standard deviations, then a claim that the observed result is not the product of

**9.** Plaintiff has presented to the court a package of tables prepared by the defendant that describes the composition of the Research Center work force.

discrimination would be suspect. *Id.*[10] As presented, without proper analysis, plaintiff's statistics are meaningless. They do not show a continuous practice or policy of discrimination.

Standing alone, the evidence of individual and discrete incidents of discrimination—the four incidents involving the plaintiff, the forced retirement of the manager, the failure to promote the other older assistant manager, and the failure to pay the older assistant manager as much as the younger assistant managers—is inadequate to support a claim that there has been a pattern and practice of discrimination. *See Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir.1984) (sample of ten terminations too small to prove pattern or practice of discrimination); *Ste. Marie v. Eastern R.R. Ass'n*, 650 F.2d 395, 405 (2d Cir.1981) (seven individual acts of discrimination insufficient to establish a pattern or practice of discrimination). These individual examples of discrimination would only be relevant to determining whether defendant engaged in a "continuous practice and policy of discrimination," *Miller*, 755 F.2d at 25, if the record contained other probative evidence of a practice of discrimination. *See Ste. Marie*, 650 F.2d at 405 (Evidence of individual acts of discrimination "may indeed strengthen the inference of a pattern or practice of purposeful discrimination that can be drawn from a valid statistical showing of disparities in the work force."). However, as discussed above, plaintiff has not made a valid statistical showing of discrimination, and, as discussed below, the other evidence of a system of discrimination is also not probative.

The mere fact that defendant adopted several voluntary early retirement plans and then asked its employees if they were interested in accepting early retirement is not evidence of any discrimination, *see Henn v. National Geographic Soc'y*, 819 F.2d 824, 827–28 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987),[11] and certainly not evidence of a company-wide policy to discriminate. Plaintiff appears to argue that since defendant had a voluntary retirement plan, the burden shifts to defendant to prove that it did not engage in a continuous pattern of discrimination. Plaintiff, however, has cited no case that holds that the burden of proof is shifted in an age discrimination case any time the employer has adopted a voluntary retirement plan. Plaintiff's reliance on *Cipriano v. Board of Education,* 785 F.2d 51 (2d Cir.1986), is misplaced. In *Cipriano*, the plaintiffs, who had retired after reaching the age of 60, challenged the validity of an early retirement plan that treated people over age 60 less favorably than those under age 60. *See id.* at 52. The employer asserted that the plan was a "bona fide" retirement plan exempt from the ADEA under 26 U.S.C. § 623(f)(2). *Id.* Unlike plaintiff in this case, the plaintiffs in *Cipriano* were challenging the *structure* of a plan that *on its face discriminated against persons over 60,* and on those facts the court found that the employer "must come up with some evidence that the plan is not a subterfuge to evade the purposes of the ADEA by showing a legitimate business reason for structuring the plan as it did." *Id.* at 58. Because plaintiff is not contesting the structure of defendant's early retirement plans, *Cipriano* is clearly inapposite. Plaintiff can point to no case in which the mere existence of a voluntary early retirement plan provides the basis for finding a continuing violation. Nor is there any significance to the fact that defendant's managers discussed the plan with defendant's employees on numerous occasions. An employer may discuss termination arrangements with its employees without violating the ADEA. *Cf. Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 917 n. 2, 924 (2d Cir.1981) (plain-

**10.** This methodology can be adjusted for small samples. *See Moultrie v. Martin,* 690 F.2d 1078, 1084 n. 10 (4th Cir.1982).

**11.** In *Henn,* the Seventh Circuit disagreed with *Paolillo v. Dresser Ind.,* 813 F.2d 583 (2d Cir. 1987), which held that an employer's use of an early retirement plan creates a prima facie case of age discrimination. That *Paolillo* decision, which was published in the advance sheet, 813 F.2d at 583–87, was ordered withdrawn. *See Paolillo v. Dresser Ind.,* 821 F.2d 81, 82 n. 1 (2d Cir.1987).

tiff failed to establish a prima facie case of discrimination despite the fact that plaintiff's employer wrote plaintiff a letter concerning the terms of plaintiff's discharge).

The remaining evidence of a continuous pattern of discrimination consists of a memo prepared by one of plaintiff's managers, Thomas Wraight, which indicates that two of defendant's employees were to be evaluated if they accepted demotions rather than early retirement, and the statements made by James Clark.[12] This evidence is inadequate to establish a continuing policy of age discrimination. There is no evidence that the employees who were given an explanation of a choice between retirement and demotion were discriminated against because of their age, and the mere fact that the employees were offered a difficult choice is not evidence of a discriminatory system.[13] Clark's stated goal to reduce the engineering work force by three percent is not an age-related statement. Only Clark's statements that employees should be replaced every five years and replaced at a lower cost are evidence of an intent to discriminate against older employees. This court is unwilling, however, to hold that those two statements standing alone are sufficient to establish a pattern and policy of discrimination.

b. *The Evidence Does Not Support a Finding That Defendant's Conduct Towards Plaintiff Amounted to a Series of Related Acts*

■ According to plaintiff, defendant's actions towards him constitute "a series of related discriminatory acts directed against him in particular to deny him job opportunities because of his age and to coerce him into retiring once he reached age 55." To support that claim, plaintiff in his brief walks the court through a narrative of plaintiff's employment history with defendant, beginning with the alleged failure to promote in 1977 and ending with plaintiff's demotion in 1982. As far as this court can tell, however, the only thing related about

defendant's actions is that they involved the same employee and they were all to that employee's detriment. Except for that element of continuity, they are discrete acts, and to repeat, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. at 257, 101 S.Ct. at 504. There are no *specific facts* to show that the acts are related so as to constitute a plan to remove plaintiff from defendant's work force because of his age. Evidence of adverse action taken with respect to other employees is not probative on the question of whether the actions taken against plaintiff individually are "a series of related acts." To find a series of related acts in this case would be to hold that a continuing violation exists every time an employer commits multiple acts of discrimination against a single employee. To so hold would completely undermine the purpose of the ADEA filing requirements.

3. *There is No Basis for Finding That Defendant is Equitably Estopped from Asserting Its Statute of Limitations Defense*

■ Plaintiff contends that, even if the statute of limitations is not tolled as a result of a continuing violation, defendant is nonetheless equitably estopped from asserting that plaintiff's claims are time barred. According to plaintiff, he did not file a charge of age discrimination after his demotion in 1979 because defendant promised him that he would not be demoted again as long as his performance remained satisfactory. The making of such a promise, however, does not estop defendant from raising a statute of limitations defense. Plaintiff's citation to *Cerborne v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir.1985), does not support his argument. In *Cerborne*, the court discussed cases in which "the employee alleged that he had delayed filing a discrimi-

---

12. For purposes of this decision, the court assumes that plaintiff could support his claim that these statements are not inadmissible hearsay.

13. Even if defendant's treatment of those employees was discriminatory, plaintiff has not shown a continuous policy of discrimination. *See Haskell*, 743 F.2d at 121.

nation charge because, subsequent to his discharge, demotion, or forced retirement, his employer had promised to reinstate him in his former or a comparable alternative position." *Id.* at 49. In these circumstances, "courts have held that it was improper to grant summary judgment to the employer on the ground that the action was time-barred." *Id.* According to *Cerborne,* such cases can be explained either as applications of the doctrine of equitable tolling where "the employer concealed from the employee existence of the cause of action," or as "fashioning a doctrine that the employer is estopped from asserting the limitations bar because he represented, in effect, that he would settle the ADEA claim, and the employee delayed in filing his EEOC charge in reliance on that promise." *Id.* Neither theory fits the facts of this case. In this case, plaintiff kept careful notes of defendant's actions and consulted attorneys all with an eye towards a possible age discrimination claim. Plaintiff cannot claim that the limitations period should be equitably tolled. Nor is there evidence that defendant indicated to plaintiff that it would "settle" plaintiff's 1979 claim of discrimination. By promising not to further demote plaintiff, defendant in no way held out that it would return plaintiff to his former or a comparable position. Defendant only promised not to demote him. As the court in *Cerborne* commented, "[w]e are reluctant to fashion tolling or estoppel rules that would deter an employer who makes a decision to discharge or demote an employee from seeking to ameliorate the effects of that decision." *Id.* at 50 n. 4.

## II. *Motion in Limine*

■ In its motion in limine, defendant argues that plaintiff should not be allowed to present evidence of the discriminatory events of 1977, 1979, and 1981 at trial. The court agrees. Because the alleged acts of discrimination against plaintiff are no longer actionable, evidence of those acts is not admissible unless it makes the existence of discrimination in 1982 more probable. *See* Fed.R.Evid. 401, 402. Because the court has already found that the evidence is insufficient to establish a continu-

ous practice or policy of discrimination, plaintiff may not use the evidence to establish a pattern or practice of discrimination as part of his prima facie case. *Cf. Stanojev,* 643 F.2d at 921 (plaintiff may establish a prima facie case through evidence of a pattern of discrimination). Moreover, presentation of such evidence would be likely to confuse the jury, unfairly prejudice the defendant, and unduly delay the trial. *See* Fed.R.Evid. 403. In addition, defendant asks this court to rule that plaintiff may not present his "statistics" at trial and that plaintiff may not present evidence of constructive discharge in 1987. As discussed with respect to defendant's motion for summary judgment, without expert analysis of the standard deviation, plaintiff's statistical evidence concerning promotions at the Research Center is meaningless, confusing, and irrelevant. As presented to the court in this motion, the statistics are inadmissible. Any other evidentiary rulings will be made at the appropriate time during the course of the trial.

Plaintiff is permitted, however, to make a written offer of proof concerning the 1977, 1979 and 1981 incidents. Such offer of proof shall contain the plain facts on which plaintiff bases his claims, without argument or emotional coloration.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's claims for damages for the 1977, 1979, and 1981 acts of alleged discrimination are time barred. Defendant's motion in limine is granted in part and denied in part. Evidence of the 1977, 1979, and 1981 incidents is not admissible, nor is the statistical evidence concerning promotions at the Research Center admissible. Rulings on the admissibility of other evidence will be made at trial.

SO ORDERED.